UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Magistrate Docket No. 08 MJ 2131 |
| ) | |
| Plaintiff, ) | COMPLAINT FOR VIOLATION OF: |
| ) | |
| v. ) | Title 8, U.S.C., Section 1326 |
| ) | Attempted Entry After |
| Jose TORRES-Garcia, ) | Deportation |
| AKA: Juan SALINAS-Garcia ) | |
| ) | |
| Defendant ) | |

The undersigned complainant, being duly sworn, states:

On or about **June 26, 2008** within the Southern District of California, defendant, **Jose TORRES-Garcia AKA: Juan SALINAS-Garcia,** an alien, who previously had been excluded, deported and removed from the United States to **Mexico**, attempted to enter the United States with the purpose, i.e. conscious desire, to enter the United States at or near the San Ysidro, California Port of Entry, without the Attorney General or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8 United States Code, Section 1326.

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **14th** DAY OF **JULY 2008.**

Cathy A. Bencivengo
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Jose TORRES-Garcia
AKA: Juan SALINAS-Garcia

## PROBABLE CAUSE STATEMENT

On June 26, 2008, Border Patrol Agents R. Nava and G. Ioannidis were assigned line watch duties at an area known as Whiskey 3 and Whiskey 4 in Imperial Beach Station's area of responsibility. Whiskey 3 is approximately a quarter mile west of the San Ysidro, California Port of Entry and adjacent to the United States/Mexico border fence, on the northern levee of the Tijuana River channel. Whiskey 4 is approximately one half mile west of the San Ysidro, California Port of Entry and also adjacent to the United States/Mexico border fence. The Tijuana River channel cuts across the United States/Mexico border fence at Whiskey 3. A border fence lines the northern levee of the channel, however; the southern side of the levee is not completely fenced, making for easy accessibility to anyone to travel from Mexico to the border fence. In addition, the Las Americas Outlet Mall, one of San Diego's largest outlet malls, is located just north of Whiskey 3 and Whiskey 4. Given its accessibility, its proximity to a large shopping center and residential area, which facilitates blending in with the general public, Whiskey 3 and Whiskey 4 are notorious for the presence of human smugglers and intended migrants attempting to illegally enter the United States. Furthermore, assaults frequently occur in this area.

As Agent Ioannidis was arriving to his assigned position, information was broadcasted over the radio indicating that approximately ten to fifteen individuals were staging south of Whiskey 3. Approximately six subjects were south of the primary border fence, and at that least one individual was carrying a ladder. The other subjects were across the channel on the south side of the levee. In Agent Ioannidis' experience, the subjects who stage south of the levee typically enter the channel and run northwest, in an attempt to lure agents while the subjects staging south of the primary border fence utilize the ladder to get over the U.S./Mexico border fence and make an abrupt illegal entry. Given that a large number of subjects, Supervisory Border Patrol Agent Joseph Ralph requested the presence of an agent with a Pepper-ball Launching System (PLS) as a precautionary measure in case the large crowd became combative.

At approximately 4:45 PM Border Patrol Agent N. Serna responded from an area known as "Smuggler's Canyon" to provide assistance. Agent Serna picked up Agent Ioannidis in his Service vehicle from Whiskey 4 and drove into the channel. Agent Serna positioned his vehicle near the marked U.S./Mexico boundary and noticed six subjects with a ladder on the north side of the U.S./Mexico boundary line, attempting to get over the border fence. Agents Serna and Ioannidis walked up the concrete apron, identified themselves as United States Border Patrol Agents and ordered the individuals to return to Mexico or to get on their knees and submit to arrest. Three individuals retreated back south to Mexico while the three others remained north of the U.S./Mexico boundary line and began challenging the agents. The three individuals were shouting profanities and displaying vulgarities.

Agents Serna and Ioannidis noticed that the main aggressor, later identified as defendant **Jose TORRES-Garcia (AKA: Juan SALINAS-Garcia, AKA: Yani)**, was a male with a medium build, very short hair and a mustache. This particular subject was wearing a faded red shirt with dark stripes and shorts. Agents Serna and Ioannidis recognized this person as an alien smuggler that the Imperial Beach Station Abatement Team arrested, along with other smuggling associates during a large operation on February 2008. Agents Serna and Ioannidis also recognized this person from a Power Point presentation that Supervisory Border Patrol Agent R. Del Villar gave the patrol groups which illustrated the numerous load drivers, alien smugglers and other targets that operated in the Imperial Beach Station's area of responsibility. The defendant was among the smugglers that were depicted in the presentation. Agents Serna and Ioannidis did not recognize the other two aggressors.

**CONTINUATION OF COMPLAINT:**
**Jose TORRES-Garcia**
**AKA: Juan SALINAS-Garcia**

Agent Serna presented his service issued pepper ball launcher in an attempt to persuade them to retreat. The three individuals ignored Agent Serna's continuous verbal commands. Agent Serna deployed a burst of approximately four to six PLS projectiles using the area saturation method. The projectiles struck the concrete apron in the channel at the feet of the individuals. The three individuals retreated south of the United States/Mexico boundary line and retrieved rocks from the ground and began throwing them to Agents Serna, Ioannidis and Nava. Agent Serna began to deploy approximately sixty projectiles using the kinetic impact method until the PLS air supply was completely diminished. Once out of air, the individuals continued to throw rocks at Agents Serna, Ioannidis, Nava and at Agent Serna's vehicle. Agent Serna was unable to return to his vehicle due to the continuous barrage of rocks being thrown by the assailants.

Agents Serna, Ioannidis and Nava backed away from the area to find cover from the attackers that were making their way north again, across the U.S./Mexico boundary line, towards Agent Serna's vehicle. Agents Serna, Ioannidis and Nava found shelter behind the Whiskey 3 gate. Once they realized the assault had stopped, Agent Serna emerged from cover and noticed his service vehicle had two shattered windows and that his bag, which contained his agency issued binoculars had been taken. The Remote Video Surveillance System (RVSS) operator managed to capture the image of a subject leaving the area with his bag; however, it was not possible to discern the identity of the thief.

At the station SBPA Del Villar presented Agents Serna and Ioannidis with a photo line-up. Agents Serna and Ioannidis positively identified defendant **Jose TORRES-Garcia (AKA: Juan SALINAS-Garcia, AKA: Yani**, as one of the persons they encountered on the north side of the U.S./Mexico boundary line. Agents Serna and Ioannidis described the defendant as the male with a medium build, very short hair and a mustache that was wearing a faded red shirt with dark stripes and shorts. When Agents Serna and Ioannidis encountered the defendant, he was attempting to illegally enter the United States with a ladder at Whiskey 3. Agents Serna and Ioannidis also identified the defendant as one of the persons that attacked them with numerous rocks and also threw rocks at Agent Serna's vehicle.

Routine record checks of the defendant revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprint card. Official immigration records of the Department of Homeland Security revealed the defendant was previously deported to **Mexico** on **April 15, 2008** through **San Ysidro, California.** These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.